## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

THE ESTATE OF SF

     Plaintiff,

v.                             Civil Action No. _____

THE FLORIDA DEPARTMENT OF
CHILDREN AND FAMILIES;
NORTHEAST FLORIDA STATE
HOSPITAL; LINDA WILLIAMS in her individual capacity;
AND YOLANDA HERNANDEZ in her individual capacity

     Defendants.

_____/

## COMPLAINT

COMES NOW, the Plaintiff, THE ESTATE OF SF ("Plaintiff"), by and through its undersigned counsel, sues the Defendants: the FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES, NORTHEAST FLORIDA STATE HOSPITAL, LINDA WILLIAMS in her individual capacity, and YOLANDA HERNANDEZ in her individual capacity, and alleges as follows:

### Introduction

S.F. died tragically in the care of the above-named Defendants. SF, born with mental disabilities, including intellectual disorders, bipolar disorder, and anxiety, subsequently developing a traumatic brain injury (TBI) later in his early adult life. All maladies considered; SF should have never died in the manner he did. SF's death

is a result of gross incompetence, deliberately indifferent conduct, punitive conduct, and a massive cover-up by the Department of Children and Families (hereinafter "DCF"), including as high as the assistant secretaries Erica Floyd Thomas and Megan Collins[1]. SF suffered bone fractures, inadequate supervision as required by Court Order and his medical team, physical injuries including but not limited to eye, forehead eye socket, and eyelid lacerations, a collapsed lung, broken ribs, as well as evidence of multiple sexual assaults, including forced sodomy. Indeed, DCF initially made verified findings of abuse against four individuals who were unequivocally not responsible for the death of SF. SF'mother, as well as a brave and vindicated whistleblower, Chief Hospital Administrator and Chief Medical Officer Dr. Richard Herstein, insisted that a review be completed to ensure DCF had arrived at appropriate conclusions.

Roy Carr, the DCF Director of Adult Protective Services, conducted a review **exonerating** the four named individuals, and finding that Defendants Williams and Hernandez's actions and inactions caused the death of SF. It wasn't enough that the Defendants actions and inactions killed SF, DCF senior management covered up who the real culprits were, specifically assistant secretaries Erica Floyd Thomas and Megan Collins, who retaliated against Herstein simply because he needed the four

---

[1] As more facts become known, Plaintiff intends to amend to add Erica Floyd Thomas, Megan Collins, and others for conspiracy to violate SF's state, federal, and constitutional rights.

2

employees back to work and wanted to ensure Williams and Hernandez had no further access to patients. Instead of doing the right thing, DCF delayed issuance of the third report for over nine (9) months. This delay tortured SF's immediate family, mother, minor and adult children and served no purpose other than DCF wanted to protect Williams and Hernandez who are friends with DCF senior management. This delay served no legitimate business purpose and occurred because DCF senior management was egregiously lazy and believed that delaying the release of the third report into SF's death and clearing the four individuals would benefit only DCF in litigation brought by Dr. Herstein after he was fired because he blew the whistle on DCF senior management's cover up.

Unfortunately for SF's family, DCF misled them for several months about the third report. Indeed, DCF told SF's mother that the report had not been approved by senior management yet, however, senior management misled the APS Director Roy Carr: the third report needed no further ratification. In her attempts to obtain more information, SF's mother continued to reach out to APS Director Roy Carr, who was subsequently told he could no longer speak to SF's mother. Even worse, SF's mother began corresponding with a Lawyer in the Florida Attorney General's Office who, while responsive at first, subsequently told her that he had given her enough of his time about her inquiries and wouldn't respond any further. In essence, DCF told SF's mother that she was not deserving of any more of DCF's time as it pertained to its

causing of SF's death through its employees actions and inactions. This death was avoidable, however, now SF's mother and adult children will never see him again, like several other patients with disabilities who died while in the custody and care of DCF.

Plaintiff brings this action for violations of the Americans with Disabilities Act, violations of the Eighth Amendment, and violations of Florida Statutes. Plaintiff seeks punitive damages in this action.

## **PARTIES**

1.     Plaintiff, the Estate of SF, is the estate of SF and files the following claims against the Defendants.

2.     SF., a deceased man, was a single man with one minor child and one adult child at the time of his death. SF, at all material times hereto, suffered from severe disabilities and for purposes of the causes of action herein was at all times a vulnerable adult as defined by Florida law.

3.     The Florida Department of Children and Families is a state agency in the State of Florida and receives federal funds for the provisioning of services that it provides to the public, employees, and its patients. DCF is responsible for treating patients who have been deemed incompetent to stand trial in a criminal proceeding or for patients who require civil commitment due to mental disabilities. DCF is responsible for treating both sets of patients separately, including segregating violent

patients from other patients, including specifically non-violent civilly committed patients.

4.     North East Florida State Hospital (hereinafter "NEFSH") is a state hospital, licensed by the Agency for Healthcare Administration, and was the facility SF was a patient at all times material hereto. NEFSH also receives federal funding by and through DCF.

5.     Yolanda Hernandez (hereinafter "Hernandez"), a medical doctor, was employed by DCF at NEFSH at all times material hereto.

6.     Linda Williams (hereinafter "Williams"), is the hospital administrator, was employed by DCF at NEFSH at all times material hereto.

## JURISDICTION AND VENUE

7.     This is an action for damages that exceed $75,000.00, not including costs, attorneys' fees, pre-judgment, and post-judgment interest.

8.     The claims asserted herein arise out of 42 U.S.C. § 1983, the American with Disabilities Act, and claims based on Florida Statutes.

9.     This Court has jurisdiction over the claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. The events giving rise to this cause of action occurred in the Northern District of Florida, and the Tallahassee Division is the appropriate division to hear this matter.

10.     The claims alleged herein are brought within the applicable statute of limitations.

11.     Plaintiff has complied with all conditions precedent and has fully and properly complied with any pre-suit notices to the extent required by Florida law.

## FACTS

12.     SF was a Florida citizen with a minor child and an adult child at the time of his passing. SF suffered from a severe traumatic brain injury such that he was entirely incapable of caring for himself in any way, let alone any meaningful way. In other words, SF relied on others for everyday care. After he was committed pursuant to the Baker Act on March 2, 2018, SF remained under the care of DCF until his untimely death.

13.     In addition to his TBI, SF suffered from or was diagnosed with physical brain damage, neurocognitive disorder, physical limitations, intellectual disabilities, bipolar disorder, anxiety, and was incontinent. He was also non-verbal, non-ambulatory, could not walk, and always required one-on-one supervision.

14.     During his time at DCF and NEFSH, as well as under the care of all Defendants, SF had a complete inability to care for himself.

15.     From his initial Baker Act commitment on or about March 2, 2018, through the date of death, his Baker Act commitment was successively renewed with his last Baker Act commitment occurring in December of 2020.

6

16.     During his commitment with the Defendants, SF attended monthly treatment team meetings that would assess his medical progress or decline. SF's parents attended all treatment meetings. In order to ensure a clear and correct diagnosis, SF's parents requested a full neurological work up and psychological evaluation in May of 2019. As part of this work up, SF was diagnosed with a TBI with frontal temporal dementia. At that time SF was determined to have a brain injury and not mental illness.

17.     Part of SF commitment, including by Court Order, required the Defendants to always maintain one-to-one care, 24 hours a day, 7 days a week. However, despite this order, the Defendants intentionally violated this order and did not keep SF in constant one-to-one care.

18.     One-to-one care within DCF health facilities for patients who require it serves several purposes. One, it ensures that the patient does not engage in self-harm. Second, it ensures that patients like SF, who like to put things in their mouth like infants and toddlers, cannot choke to death. Third, it ensures that patients like SF are taken care of in every way, including bathing, changing diapers or cleaning up clothing from bowel movements and urine, feeding the patients, it protects the patients from harm by others. For example, criminal patients who are awaiting trial but their competency has been challenged/such patient has been found incompetent to stand trial/found not guilty by reason of insanity, are required to be cordoned off

from other civil commitments, especially when such criminal patients have known violent tendencies or have alleged to have engaged in crimes that are patently violent, like murder, aggravated battery kidnapping, and sexual assault, amongst others.

19.     The Defendants had no intention of complying with the Court Order, or medical order by their colleagues that SF receive one-to-one care. Defendants DCF and NEFSH may have been short staffed, but during the relevant time period, the Defendants did nothing to try to bridge the gap on their critically low staffing.

20.     On September 22, 2020, NEFSH commingled violent criminal patients with civil commitment patients. Even worse, in addition to commingling patients in violation of either rule, policies, or directives, on this particular day, the Defendants did not provide one-to-one care or supervision to SF. As a result, career criminal Markeith Lloyd had the access and opportunity to harm SF. Indeed, Markeith Lloyd caused severe injuries, to SF including bruising, bone fractures, lacerations, and contusions to SF's face, eyes, forehead, and orbital areas. The beating was so bad that SF had to be taken by ambulance to Baptist Hospital in Jacksonville.

21.     On or about November 23, 2020, SF was sent to an outside hospital for evaluation. There it was determined that he had suffered broken ribs, bone fractures, testicular bruising and mutilation, a collapsed lung, as well as evidence of multiple sexual assault with new and old bruising.

22.     SF tragically and untimely passed less than sixty (60) days later as a result of the injuries he sustained while in the care, custody, and control of the Defendants.

**FIRST TWO APS INVESTIGATIONS INTO THE DEATH OF S.F.**

23.     Initially the APS conducted an investigation and could not determine who was to blame for SF's untimely death. SF's mother called Roy Carr and demanded the investigation continue, arguing that it is unfathomable that this could happen to someone in DCF's care, and they couldn't determine who committed such egregious violations of SF's rights. Carr ordered a second investigation which asserted verified findings of abuse against four individuals who worked at NEFSH. These four individuals were immediately placed on administrative duties and were denied access to patients.

24.     These four individuals protested and made clear they were not the individuals who were responsible for the gross violations of SF's state, federal, and constitutional rights. One of the individuals they complained to was Dr. Richard Herstein, the Chief Hospital Administrator for DCF, as well as the Chief Medical Officer for DCF. Herstein requested a third investigation in light of what was disclosed to him by the four accused individuals.

## DCF SENIOR MANAGEMENT, INCLUDING ERICA FLOYD THOMAS AND MEGAN COLLINS BEGAN TO CONSPIRE AND COVERUP THE TRUE FACTS OF SF'S DEATH

25.     On or about September 29, 2021, Carr finished his third report, exonerating the four individuals, and charging Defendants Williams and Hernandez with several verified findings of abuse. Herstein requested that the four individuals be immediately placed back to work and that Hernandez and Williams be placed on administrative duties, consistent with the treatment the prior four individuals received.

26.     On September 30, 2021, Herstein was ordered to the office of Assistant Secretary Erica Floyd Thomas, the second highest ranking employee at DCF, and was ordered to leave the investigations alone, that Hernandez and Williams were "people of color" and that putting them on administrative duties could send the wrong message. Herstein was concerned with short staffing at DCF, as well as the adverse impact verified findings of abuse would have on the prior four individuals. Floyd Thomas shared neither of the same concerns, that is, the short staffing at DCF or the disclosure to SF's family about what really happened to SF and who engaged in the unlawful conduct against him.

27.     This coverup by Erica Floyd Thomas, Secretary Shevaun Harris, and Megan Collins continued into the Fall and Winter of 2021. Herstein emailed Collins informing her the one of the original four individuals was going to be subject to licensure forfeiture proceedings and had to pay out of her own pocket to hire a lawyer because DCF refused to withdraw the verified findings of abuse against the original

four. Such a decision was gutless, immoral, and also delayed the disclosure to the SF family about what happened to their son/father. On December 7, 2021, Herstein was ordered to Collins office. When he arrived, Collins berated Herstein, telling him that she "thought I told you to stay out of this." Collins' intentions and efforts to coverup what happened to SF and by whom was transparent.

28.     DCF grew tired of Herstein's concern for the original four individuals, his concern for the SF's family and his concern for the short staffing at DCF. Approximately three weeks later, DCF fired Herstein in retaliation for his whistleblower activity.

29.     In June of 2022, after Herstein sued to keep his job, a judge ruled that Herstein was in fact a whistleblower, that he had been fired in retaliation for his protected activity, and ordered him reinstated to his prior position, ordered full back pay and all benefits, as well as all of his attorneys fees.

30.     Incredibly, at the time of the hearing, DCF still had testified that Carr's third report had not been finalized. The testimony at Herstein's reinstatement hearing made clear that DCF had been consistently lying to SF's mother, continuing to conspire and coverup the truth about what happened to SF, as well as the identity of the individuals who were responsible for his injuries and untimely death. It also became known at Herstein's reinstatement hearing that DCF, after nine (9) months of knowing that the original four individuals had been cleared and exonerated, DCF

still had not bothered to withdraw the allegations against those individuals. DCF's conduct is especially despicable given that one of the four was facing potential loss of her medical license due to DCF's delay. DCF had no explanation for the Court that could in anyway justify its shocking conduct.

## COUNT I
### Title II of the Americans with Disabilities Act (ADA)
### Against Defendants DCF and NEFSH

31.    Plaintiff incorporates and re-alleges paragraphs 1 through 30 as if fully set forth herein.

32.    This count is brought under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. 12101, *et seq*. and 42 U.S.C. §§ 12131-12134, and its implementing regulations.

33.    The ADA prohibits public entities from discriminating against individuals with disabilities in their services, programs, and activities. 42 U.S.C. §§ 12131-12134: *see also* 28 C.F.R. §§ 35.130.

34.    Defendants DCF and NEFSH are public entities within the meaning of 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

35.    SF had a traumatic brain injury, intellectual disabilities, neurocognitive disorder, was non-verbal, and had physical brain damage. There can be no question that SF suffered from an actual disability, was regarded as having a disability, and had a record of disability. SF's conditions were a physical impairment that

substantially limited one or more of his major life activities, including processing, speaking, eating, walking, bending, lifting, concentrating, thinking, communicating, and the operation of major bodily functions. *See* 42 U.S.C. § 12102(1) & (2); 28 C.F.R. § 35.108(a) & (b); 42 U.S.C. § 12102(2); 28 C.F.R. § 35.108(c).

36.    SF was a qualified individual with a disability because he met the essential eligibility requirements for the receipt of services for the participation in programs or activities provided by Defendants DCF and NEFSH, including but not limited to medical services and one-to-one care as ordered by a Court of competent jurisdiction.

37.    DCF and NEFSH withheld one-to-one supervision from SF while providing it to other patients within DCF and NEFSH.

38.    DCF., and NEFSH intentionally did not provide one-to-one contact to SF., DCF and NEFSH also intentionally discriminated against SF by placing Markeith Lloyd, SF's attacker, on the same floor and unit as SF., Lloyd, a career violent criminal, should not have been placed or housed on the same floor as SF., However, DCF and NEFSH intentionally placed Lloyd in the same unit, and permitted Lloyd to have contact with SF, including specifically when SF should have had one-to-one care, care that DCF and NEFSH intentionally did not provide despite a mandate requiring such care.

39.    By engaging in this conduct, DCF and NEFSH subjected SF to discrimination. DCF and NEFSH failed to provide SF with equal access to and enjoyment of effective medical services, while also subjecting him to violent criminal who should have never been on the same floor as SF., DCF and NEFSH knew about these violations and had a policy of allowing these violations, thereby exhibiting deliberate indifference to the rights of SF.

40.    As a direct and proximate cause of DCF and NEFSH' actions and omissions, SF suffered harm and violation of his ADA rights.

WHEREFORE, Plaintiff demands judgment against Defendant DCF and Defendant NEFSH for compensatory damages, including for physical injury, disfigurement, permanent physical injury, and emotional pain and suffering, loss of support, loss of contributions to SF's estate, punitive damages, for all prejudgment interest allowable under law, all damages allowed to his estate under law, for attorneys' fees and costs incurred in connection with this litigation, and for such other relief as this court deems appropriate.

## COUNT II
**42 U.S.C. § 1983** – Eighth Amendment
Against Defendants Hernandez and Williams

41.    Plaintiff incorporates and re-alleges Paragraphs 1 through 30 as if fully set forth herein.

42.    This count is brought through 42 U.S.C. § 1983 and against Defendants Hernandez and Williams for violations of the Eighth Amendment's prohibition of cruel and unusual punishment on individuals within the care, custody, and control of the state, like SF, pursuant to a civil commitment order such as a Baker Act.

43.    At all times relevant hereto, and for purposes of this count, Hernandez and Williams acted under color of state law and intentionally deprived SF of his rights under the United States Constitution. Hernandez and Williams are sued in their individual capacities.

44.    SF had a serious medical need as he was diagnosed with a TBI, amongst other qualifying disabilities and serious medical needs. Hernandez and Williams were both subjectively aware that SF had these conditions and serious medical need. SF condition and serious medical need was so obvious that even a layperson would easily recognize the necessity for medical attention and treatment.

45.    Despite qualifying and being approved for and ordered to receive such treatment, Hernandez, and Williams, amongst others, refused to provide such treatment to SF. Hernandez and Williams also permitted Lloyd to have access to SF at a time when Hernandez and Williams were discriminating against SF by not providing him with one-to-one care.

46.    Hernandez and Williams intentionally failed to provide Plaintiff with such treatment despite being under court order and medical directives to provide

15

one-to-one care. They also knew that such care was required to protect SF from himself and from others. Hernandez and Williams have caused the wanton infliction of pain upon SF, by exhibiting deliberate indifference to his serious medical needs and condition.

47.     SF suffered worsening medical conditions, including substantial physical injury, due to Hernandez and Williams' violation of federal and constitutional law. Thus, Hernandez and Williams have been deliberately indifferent to the substantial risk of serious harm their conduct had placed SF in. By denying SF his rights and medical treatment, imposed punishment far in excess of that authorized by law, contrary to the Eighth Amendment.

48.     Hernandez and Williams' conduct amounted to no medical care or treatment at all.

49.     SF/Plaintiff suffered damages as a direct and proximate cause of Hernandez and Williams' constitutional violation, including permanent physical injuries, emotional pain and suffering, loss of net accumulations to the Estate, as well as other damages.

WHEREFORE, Plaintiff demands judgment against Defendant Williams and Defendant Hernandez for compensatory damages, including for physical injury, disfigurement, permanent physical injury, and emotional pain and suffering, loss of support, loss of contributions to SF's estate, punitive damages, for all prejudgment

16

interest allowable under law, all damages allowed to his estate under law, for attorneys' fees and costs incurred in connection with this litigation, and for such other relief as this court deems appropriate.

**COUNT III**
**Violation of Section 415.1111, Florida Statutes**
**Against Defendants, DCF and NEFSH**

50.     Plaintiff incorporates and re-alleges Paragraphs 1 through 30 as if fully set forth herein, however, to the extent prior allegations conflict with this Count, the allegations in this Count govern for purposes of this Count only.

51.     For purposes of this Count, pursuant to Section 415.1111, Florida Statutes, Defendant DCF and Defendant NEFSH are vicariously liable for the actions of Defendant Hernandez and Defendant Williams.

52.     The conduct complained of in this Count, and for purposes of this Count, is not medical in nature, or a failure to provide medical services. Thus, *Specialty Hosp.-Gainesville, Inc. v. Barth*, 277 So. 3d 201 (Fla. 1st DCA 2019) and its progeny do not bar this claim. For example, placing patients on specific floors or units is not medical care in nature. Placing other patients on similar floors, in similar units, who should not have had such a placement is also not medical services or otherwise medical in nature. Maintaining an environment where a patient, like SF, could be exposed to beatings, assaults, and force anal rape.

53.     The breach of the duties owed to SF by all Defendants, including other agents and employees of Defendant DCF and Defendant NEFSH, was the proximate cause of SF's injuries.

54.     Plaintiff and SF both suffered severe damages, including the death of SF.

WHEREFORE, Plaintiff demands judgment against Defendants Hernandez and Williams for compensatory damages, loss of enjoyment of life, emotional pain and suffering and mental anguish, punitive damages, prejudgment interest, attorneys' fees and costs, and such other relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial on any and all Counts so triable under applicable law.

[Signatures on following page]

**DATED** this 22nd day of July, 2022.

> **THE ESTATE OF SF,**
> Plaintiff
>
> */s/Ryan J. Andrews*
> Ryan J. Andrews, Esq. (FBN 104703)
> Andrews Law Firm
> 822 N Monroe Street
> Tallahassee, FL 32303
> P: (850) 681-6416
> *ryan@andrewslaw.com*
> *service@andrewslaw.com*
>
>
> *Sarah Blalock*
> Disability Law Advocate
> Disability Advocate Group, Inc
> 1121 Covewood Trail
> Maitland, FL 32751
> P: 407-790-4288